Bardwell *v.* Roberts.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, January 7, 1873. *Mullin, Talcott* and *E. D. Smith*, Justices.]

---

## BARDWELL *vs.* ROBERTS.

The plaintiff having become surety for B. upon a note for $190, given for the purchase price of a yoke of cattle, it was, at the time, verbally agreed between B. and the plaintiff that the cattle should be considered the property of the plaintiff until B. should pay the note; and they were delivered into the possession of the plaintiff. Before the note was paid, B., without the plaintiff's knowledge, took possession of the cattle and sold them to the defendant. *Held* that the delivery of the cattle to B., at the time of making the agreement, rendered such agreement valid, under the statute of frauds, as a verbal chattel mortgage.

On the trial, the plaintiff gave evidence tending to show that when the defendant purchased he knew of the arrangement between the plaintiff and B.,

that the cattle should be the property of the plaintiff until the note was paid. *Held* that the question should have been submitted to the jury.

A verbal chattel mortgage, accompanied by delivery of property, is valid.

IN the summer or autumn of 1870 the plaintiff entered into a contract with George G. Baker, to skid and draw to the plaintiff's saw-mill, in Remsen, Oneida county, a quantity of saw logs. Baker wanted a yoke of cattle to enable him to perform his contract. One Hughes had a pair that would answer Baker's purpose, that he offered to sell to Baker for $190, but declined to take Baker's note therefor. Baker then applied to the plaintiff to aid him in purchasing the cattle, by joining with him in a note for the price.

The plaintiff says that he went with Baker to see the cattle, but refused to become liable for the price without security, and that it was agreed between them that if the plaintiff would join in the note, the cattle should be called his, and should be his, until the note was paid; and that under this arrangement he signed the note, and that the cattle were driven to his house and put in his lot. They were subsequently taken away by Baker and sold to the defendant. They were taken in the morning. The plaintiff missed them in the evening of the same day, and followed them the next day, and found them at the defendant's. He demanded them of Roberts, who refused to deliver them. Evidence was also given, on the part of the plaintiff, tending to show that when Roberts purchased he knew of the arrangement between the plaintiff and Baker, that the cattle should be the plaintiff's until the note was paid. Baker and others were sworn on the part of the defendant, and gave evidence tending to prove that no agreement was made that the cattle should be and remain the plaintiff's until the note was paid.

The action was brought before a justice of the peace of Oneida county, to recover the value of the cattle.

Judgment was rendered for the plaintiff by the justice, and the defendant appealed to the county court.

The cause was again tried in that court, and without hearing all the evidence on the part of the defence, the court instructed the jury to render a verdict for the defendant; to which instruction the plaintiff's counsel excepted, and asked that the question of fact in the case be submitted to the jury. The court refused to submit any of the questions of fact to the jury, and the plaintiff's counsel excepted.

The plaintiff moved for a new trial, and the motion was denied. Judgment was entered on the verdict, and from it the plaintiff appealed.

*John D. Kernan,* for the appellant, cited *Thompson* v. *Blanchard,* (4 *N. Y.* 303, 307, 308;) *Wilson* v. *Little,* (2 *id.* 443;) *Bank of Rochester* v. *Jones,* (4 *id.* 506, 507;) Contra, *Powers* v. *Freeman,* (2 *Lans.* 131; 2 *R. S., Edm. ed.,* 140, &c.;) *Shindler* v. *Houston,* (1 *N. Y.* 261; 1 *Wait,* 138;) *Baltes* v. *Ripp,* (3 *Keyes,* 210; 2 *Sweeney,* 54, 218;) *Butler* v. *Miller,* (1 *N. Y.* 497.)

*J. T. Spriggs,* for the respondent, cited *Ballard* v. *Burgett,* (40 *N. Y.* 314, *and cases cited;*) 1 *Langdell's Select Cases on Sales,* 730, *and cases cited; Potts* v. *Congdon,* (2 *N. Y.* 352;) *Van Horne* v. *Everson,* (13 *Barb.* 526;) *Ramsay* v. *Lewis,*) 30 *id.* 403;) *Reed* v. *Sands,* (37 *id.* 185;) *Haynes* v. *Ward,* (4 *John. Ch.* 123;) *State Bank* v. *Fletcher,* (5 *Wend.* 85;) *Vartie* v. *Underwood,* (18 *Barb.* 561;) *Edson* v. *Dillaye,* (17 *N. Y.* 158.)

*By the Court,* MULLIN, P. J. Were it not for the statute of frauds, all verbal sales of goods and chattels would be valid. That statute declares all sales of goods, &c., for the price of $50 or upwards void unless a memorandum of the sale, in writing, is made and signed by the parties, or the property, or some part of it, be ac-

cepted by the buyer, or he pay part of the purchase money. (2 *Stat. at Large*, 140, § 3.)

If a sale is valid when there is a delivery of part of the property, it is not perceived why there may not be a verbal mortgage, when the property is delivered to the mortgagee. It has been held that such mortgages are valid. In *Ackley* v. *Finch*, (7 *Cowen*, 290,) there was an agreement, between Ackley and Finch, that Finch should assign to Ackley a judgment bond against one Smith, and deliver to him a chaise and harness as his property, absolutely, and allow a debt Ackley had against Finch, and that he (Ackley) would advance $120 to discharge a levy on Finch's property. This agreement was carried into effect. Ackley then said to Finch, "If you will pay me the amount I have paid, and my debt amounting to $206, with interest, on or before the 1st March next, I will receive it and redeliver you the property." This was held a valid mortgage. (*Bank of Rochester* v. *Jones*, 4 *Coms.* 506. *Ferguson* v. *The Union Furnace Co.*, 9 *Wend.* 345.)

The plaintiff gave evidence tending to prove the agreement that the plaintiff should take into his possession and keep the cattle until the note was paid. This was a valid mortgage, within the cases cited. Indeed those cases are on all-fours with this.

The defendant having denied that there was an agreement that the cattle should be the plaintiff's until the note was paid, it was the duty of the court to submit that question to the jury; refusing to do that, the plaintiff has the right to insist that the jury would have found there was such an agreement; and we must assume, for the purposes of the case, there would have been such a finding.

If the transaction was not a mortgage, it was a pledge, and the plaintiff having kept possession of the oxen, he was entitled to recover.

The plaintiff says that the cattle were to be his, and

they were driven to his lot, and there is not a word of evidence that they ever passed out of his possession, until they were wrongfully taken by Baker and sold to the defendant.

But if Baker did have the use of the oxen, it would not render void the plaintiff's title, within the cases cited from the 9th *Wendell*, (*supra.*)

The plaintiff gave evidence tending to prove that the defendant was informed, before his purchase, of the plaintiff's interest in the property: he was not therefore a *bona fide* holder. This question should also have been submitted to the jury.

The judgment must be reversed and a new trial ordered, costs to abide the event.

New trial granted.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, January 7, 1873. *Mullin, Talcott* and *E. D. Smith*, Justices.]